IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CONVERGENT MEDIA SOLUTIONS, LLC, <br> Plaintiff, <br> v. <br><br> AT&T SERVICES, INC., <br> Defendant. | § § § § § § § § | CIVIL ACTION NO. 3:15-CV-2156-M <br> (LEAD CASE) |
| CONVERGENT MEDIA SOLUTIONS, LLC, <br> Plaintiff, <br> v. <br><br> NETFLIX, INC., <br> Defendant. | § § § § § § § § | CIVIL ACTION NO. 3:15-CV-2160-M |
| CONVERGENT MEDIA SOLUTIONS, LLC, <br> Plaintiff, <br> v. <br><br> ROKU, INC., <br> Defendant. | § § § § § § § § | CIVIL ACTION NO. 3:15-CV-2163-M |

## MEMORANDUM OPINION AND ORDER

Before the Court are two identical Motions to Dismiss, filed by (1) Defendant Netflix, Inc. ("Netflix") [Docket Entry #10] in 3:15-cv-02160-M, *Convergent Media Solutions, LLC v. Netflix, Inc.*, and (2) Defendant Roku, Inc. ("Roku") [Docket Entry #10] in 3:15-cv-02163-M, *Convergent Media Solutions, LLC v. Roku, Inc.*[1] For the reasons stated, the Motions are DENIED without prejudice.

---

[1] The Court consolidated, for pretrial purposes only, four related actions for patent infringement brought by Plaintiff Convergent Media Solutions, LLC. *See* Order dated 11/12/15 [Docket Entry #23]. The parties

1

In these related actions for patent infringement, Plaintiff Convergent Media Solutions, LLC asserts U.S. Patent Nos. 8,527,640 ("the '640 Patent"), 8,640,183 ("the '183 Patent"), 8,689,273 ("the '273 Patent"), 8,850,507 ("the '507 Patent"), and 8,914,840 ("the '840 Patent") against Netflix. Plaintiff also asserts U.S. Patent No. 8,893,212 ("the '212 Patent"), as well as the '507 Patent, against Roku. Simply stated, the patents-in-suit are directed toward technology-based solutions relating to the wireless integration and control of media playback device sets. Plaintiff alleges that Netflix and Roku's mobile applications infringe on at least nine different claims of the patents-in-suit. Netflix and Roku contend that the patents-in-suit claim unpatentable subject matter under 35 U.S.C. § 101, and seek to have Plaintiff's claims against them dismissed under Fed. R. Civ. P. 12(b)(6).

Section 101 provides that:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. §101. However, the right of inventors to obtain patents, as codified in §101, contains an implicit exception for laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l,* --- U.S. ---, 134 S. Ct. 2347 (2014) (citing *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, --- U.S. ---, 133 S. Ct. 2107, 2116 (2013). In determining whether to apply this exception under §101, courts "must distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the

---

in one of those cases, 3:15-cv-02158-M, *Convergent Media Solutions, LLC v. Hulu, LLC*, recently settled, and, on September 13, 2016, the Court dismissed with prejudice all of Plaintiff's claims against Hulu, LLC. *See* Order of Dismissal [Docket Entry #44]. Although Hulu, LLC had filed a Motion to Dismiss identical to the instant motions, that Motion was terminated when Plaintiff's claims against Hulu, LLC were dismissed. AT&T Services, Inc., the defendant in the lead case, 3:15-cv-02156-M, *Convergent Media Solutions LLC v. AT&T Services, Inc.*, did not file a Motion to Dismiss.

building blocks into something more, thereby 'transform[ing]' them into a patent-eligible invention." *Alice*, 134 S. Ct. at 2354. To make that distinction, courts apply the two-step test originally articulated in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. ---, 132 S. Ct. 1289 (2012), and reaffirmed in *Alice*.

This test requires the Court to first "determine whether the claim[ ] at issue [is] directed to one of those patent-ineligible concepts," such as an abstract idea. *Alice*, 134 S. Ct. at 2355. If the challenged claim is directed to a patent-ineligible concept, the court must then "determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1296–97).

At the "inventive concept" step, the Court considers the elements of the claim both individually and "as an ordered combination," in order to determine if an element or combination of elements within the claims are "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* A claim may become patent-eligible when the "claimed [invention] include[s] . . . unconventional steps . . . that confine[ ] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).

Patent-eligibility is a rapidly developing area of the law. In just the past six months, the Federal Circuit has issued several important decisions on the topic: *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016); *In re TLI Commc'ns Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016); and *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*,

2016 WL 3512158 (Fed. Cir. June 27, 2016).[2] *Enfish* specifically addressed the growing trend among lower courts to invalidate, as abstract, claims directed to software. The Federal Circuit cautioned that lower courts should not conclude that all claims directed to improvements in computer-related technology, including those directed to software, are abstract and therefore necessarily analyzed at the second step of *Alice*. *Enfish*, 822 F.3d at 1335.

In *TLI Communications*, the Federal Circuit instructed that the relevant inquiry at step one of the analysis is "to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *TLI Commc'ns,* 823 F.3d at 612 (quoting *Enfish*, 822 F.3d at 1335). In making this inquiry, courts are to distinguish claims "directed to an improvement in the functioning of a computer" from claims "simply adding conventional computer components to well-known business practices," or claims reciting "use of an abstract mathematical formula on any general purpose computer," or "a purely conventional computer implementation of a mathematical formula," or "generalized steps to be performed on a computer using conventional computer activity." *Id*. Claims directed to a specific improvement in computer functionality may be patent-eligible. *Enfish*, 822 F.3d at 1338-39. However, claims directed to "the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two" will likely not be found patent-eligible. *See TLI Commc'ns.,* 823 F.3d at 612.

---

[2] Two weeks ago, the Federal Circuit issued another decision on § 101 patentability. *See McRO, Inc. v. Bandai Namco Games America, Inc.*, 2016 WL 4896481 (Fed. Cir. Sep. 13, 2016). Because the parties did not have the opportunity to brief the significance of the *McRO* decision to their positions, the Court does not address the decision at length here.

In *Bascom*, which originated in this Court, the Federal Circuit provided additional guidance. The Federal Circuit instructed that claims which merely recite an abstract idea along with the requirement of performing that idea on the internet, or on a set of generic computer components, would not contain an inventive concept, but that "[a]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 2016 WL 3512158, at *6-7.

The Federal Circuit's recent decisions make very clear that a full understanding of key claim terms is critical to an informed § 101 analysis. Indeed, the Federal Circuit has previously observed that "claim construction is not an inviolable prerequisite to a validity determination under § 101," but "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012); *see also McRO, Inc. v. Bandai Namco Games America, Inc.*, 2016 WL 4896481, at *6 (Fed. Cir. Sep. 13, 2016) (observing, "as an initial matter," that "claim construction is helpful to resolve the question on patentability under § 101"). When a Rule 12(b)(6) motion is filed on § 101 grounds, it is permissible for a court to wait to resolve the motion until after claim construction has been decided. *See, e.g., Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 835 (E.D. Tex. 2014) (noting that "the Court has waited until after the claim construction hearing in this case to rule on the present motion in order to ensure that there are no issues of claim construction that would affect the Court's legal analysis of the patentability issue"). The Court finds that approach advisable in this case—a complicated infringement action involving six patents-in-suit. The Court determines

that the best approach in this case is to wait at least until after claim construction to consider § 101 issues, to ensure that there are no matters of claim construction that should affect the Court's legal analysis of the patentability issue.

Accordingly, the Court DENIES Defendants' Motions without prejudice to consideration of § 101 arguments in the context of a summary judgment motion, after claim construction has concluded.

**SO ORDERED.**

Dated: September 26, 2016.

_____
BARBARA M. G. LYNN
CHIEF JUDGE